AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
5/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
5/28/25
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MR_____ DEPUTY

UNITED STATES OF AMERICA,
    Plaintiff,

v.

JUAN OSORIO,
    Defendant

Case No. 2:25-MJ-03237-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, Madison Taylor, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of May 10, 2025, in the county of Ventura in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
Complainant's signature

Madison Taylor, Special Agent
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 28, 2025

_____
Judge's signature

City and state: Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
_____
Printed name and title

AUSA: MiRi Song (x12262)

**AFFIDAVIT**

I, Madison Taylor, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for JUAN OSORIO, also known as "Pedro Antonio Conseco" ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT MADISON TAYLOR

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"). I have been a SA with FBI, since February 13, 2023.

4. I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force ("Task Force"). As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration

and Customs Enforcement ("ICE") Enforcement and Removal Operations. As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for immigration crimes.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

5. Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

   a. Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints. In many cases, the Department of Homeland Security ("DHS") and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

   b. Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly INS), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file"). An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage. That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be

accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

      c.  Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process. That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number. A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

### IV. STATEMENT OF PROBABLE CAUSE

6.  On or about May 11, 2025, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that he was arrested by Oxnard Police Department ("OPD") for California Penal Code Section

243(e)(1), Battery of Spouse, and California Vehicle Code Section 23152(a), DUI with Prior Conviction.

    7.    Defendant is currently in custody with Ventura County Sheriff's Department.  Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly in light of his prior removals and unlawful reentry.  Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

    8.    I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

    9.    On or about May 27, 2025, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated to defendant's unique fingerprint identifier that are contained in DHS indices.  I learned the following about defendant's immigration history:

        a.    Defendant is a citizen and national of Mexico.

      b.   On or about June 27, 2023, defendant was issued a reinstatement of order of removal from the United States to Mexico.  On or about June 27, 2023, defendant was physically removed from the United States to Mexico.

      c.   On or about June 5, 2019, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on June 6, 2019.

      d.   On or about August 26, 2015, defendant was issued an order of removal by an immigration officer and was physically removed from the United States to Mexico on August 26, 2015.

      e.   On or about July 30, 2015, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on July 30, 2015.

      f.   On or about April 10, 2012, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on April 11, 2012.

      g.   On or about March 15, 2012, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on March 15, 2012.

      h.   On or about March 9, 2012, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on March 9, 2012.

   i. On or about December 12, 2011, defendant was issued an of order of removal by an immigration judge and was physically removed from the United States to Mexico on December 13, 2011.

   j. On or about December 13, 2011, defendant was issued a reinstatement of order of removal by an immigration officer and was physically removed from the United States to Mexico on March 15, 2012.

   k. Since defendant's most recent physical removal from the United States noted above, defendant was found in the County of Ventura, in the Central District of California on May 10, 2025, based on a DHS database notification.

   l. There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal.  Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

  10. Based on my review of a criminal history report for defendant, which is associated to defendant's unique fingerprint identification number(s), I have learned the following:

   a. On or about April 14, 2010, defendant was convicted in Santa Maria Superior Court in Santa Barbara County, for the offense of DUI Alcohol 0.08 percent, a misdemeanor, in violation of California Vehicle Code Section 23152(B), for which

defendant was sentenced to 29 days of imprisonment.

   b. On or about April 4, 2012, defendant was convicted in Ventura Superior Court in Ventura County, for the offense of DUI Alcohol 0.08 percent, a misdemeanor, in violation of California Vehicle Code Section 23152(B), for which defendant was sentenced to 30 days of imprisonment.

   c. On or about September 24, 2014, defendant was convicted in Ventura Superior Court in Ventura County, for the offense of DUI Alcohol, a felony, in violation of California Vehicle Code Section 23152(A), for which defendant was sentenced to 2 years of imprisonment.

   d. On or about February 22, 2018, defendant was convicted in Ventura Superior Court in Ventura County, for the offense of DUI Alcohol, a felony, in violation of California Vehicle Code Section 23152(A), for which defendant was sentenced to 8 months of imprisonment.

   e. On or about December 20, 2011, defendant was convicted in U.S. District Court Tucson, AZ, for the offense of Illegal Entry, a misdemeanor, in violation of United States Code 8 U.S.C. § 1325, for which defendant was sentenced to 75 days of imprisonment.

//
//

## VI. CONCLUSION

11. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __28th__ day of May
2025.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE